IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES NEIDIG, JR.<br>    Plaintiff | )<br>)<br>) |
| vs. | )     C.A.No. 07-229Erie |
| UNITED STATES OF AMERICA,<br>    Defendant. | )<br>)     Magistrate Judge Baxter<br>) |

## MEMORANDUM OPINION [1]

Mag. J. Susan Paradise Baxter

### I.   Procedural History

Plaintiff, formerly a prisoner incarcerated at FCI McKean, filed the instant action pro se.[2] Plaintiff alleges that unnamed staff at FCI McKean negligently delayed in diagnosing and treating his appendicitis and that the United States of America should be held liable for the medical negligence of its employees under the Federal Tort Claims Act.[3] As relief, Plaintiff seeks:

> That due to the deliberate indifference buy [sic] the staff at McKean Federal

---

[1] In accordance with the provisions of 18 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. See Documents # 6 (Plaintiff's consent filed September 13, 2007); Document # 16 (consent of Defendants "Medical Staff" and "Staff - FCI McKean" filed January 22, 2008); Document # 36 (consent of Defendant United States filed October 28, 2008).

[2] At the time of the filing of the complaint, Plaintiff was incarcerated, but has since been released from custody.

[3] Plaintiff originally raised both a *Bivens* claim for violations of his constitutional rights and a negligence claim under the FTCA. By Opinion and Order dated July 16, 2008, the *Bivens* claim was dismissed due to Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act. See Document # 28.

> Correctional Institution which resulted in excessive and unnecessary pain and suffering as a result of negligent medical care, which almost resulted in "death." A "sum certain" for compensatory damages is requested in the amount of 1.5 million dollars for negligent medical care resulting in excessive and unnecessary pain and suffering nearly resulting in death.

Document # 5, page 5.

Defendant United States has filed a motion for summary judgment [Document #53] and in support of that motion, Defendant has obtained the expert opinion of Jamie Stern, M.D. [Document # 56-6, 56-7]. Plaintiff has filed a brief in opposition to the pending motion [Document # 59].

Plaintiff has also requested that this Court appoint an expert witness on his behalf.[4] By Order dated October 20, 2009, this Court directed that the Clerk of Courts seek counsel on behalf of Plaintiff. Four such requests were made and all four requests were declined. See Documents ## 62, 63, 64, and 65. By Order dated December 18, 2009, I vacated the order directing the appointment of counsel explaining:

> This Court only has the power to **request** representation for civil plaintiffs, unlike criminal cases where counsel may be appointed by the court. If no counsel agrees to take a civil case when requested, an order appointing counsel is appropriately vacated until and if an attorney is found for the case. That is the case here. If Plaintiff finds counsel willing to represent him on his own, he may renew his motion without prejudice. Nonetheless, the case must proceed toward resolution.
>
> As this case is fully briefed, an Opinion on the motion for summary judgment will be issued in due course.

Document # 66.

Since December of 2009, neither party has filed any additional papers in this case. The

---

[4] Plaintiff seeks the appointment of an expert witness pursuant to the Federal Rules of Evidence. That request must be denied. See Hakeem v. Salaam, 260 Fed.Appx. 432, 435 (3d Cir. 2008); Ford v. Mercer County Correctional Center, 171 Fed.Appx. 416, 420 (3d Cir. 2006) ("A trial judge does not abuse his discretion in declining to appoint an independent expert solely to benefit a party who has otherwise failed to gather such evidence as would suffice to overcome summary judgment."); Hodge v. United States, 2009 WL 2843332, at *5 (M.D. Pa.) ("It is well established that plaintiffs proceeding in forma pauperis – including pro se inmates such as Plaintiff Hodge – are responsible for their expert witness fees in civil actions"). Since his release from incarceration many months ago, Plaintiff was able to seek out his own expert witness.

dispositive motion is fully briefed and is ripe for disposition by this Court.

## II.     Standards of Review

### A.     *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### B.     Motion for summary judgment

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out

specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-249.

### III.    Plaintiff's Relevant Medical History

Plaintiff claims that prison medical staff negligently delayed diagnosis and rendered negligent medical treatment for his appendicitis.  At this point in the analysis, a review of Plaintiff's medical records is appropriate.  Plaintiff has a history of hypertension and gout, for which he routinely visited the Chronic Care Clinic of FCI McKean. Document 20-6, page 2, <u>et seq</u>.  On August 9, 2006, Plaintiff was prescribed the steroid Decadron and Ibuprofen to control his gout.  <u>Id.</u> at pages 2-3.

Plaintiff alleges that he began complaining of abdominal pain on August 28, 2006, a week earlier than reflected in the medical records.  Document # 5.  Defendant has assumed for purposes of this motion that Plaintiff complained of abdominal pain as early as August 28, 2006 and again on September 2, 2006.  <u>See</u> Document # 54, page 14 n.7.

The prison medical records reflect that on September 4, 2006, McKean medical staff examined Plaintiff for complaints of abdominal pain and were unable to make a firm diagnosis.  It was noted that his symptoms indicated either a urinary tract infection ("UTI") or appendicitis.  Document # 20-6, at page 21.  Staff prescribed Bactrim and Motrin, and instructed Plaintiff to return the next morning for a follow-up.  <u>Id.</u>  Early the following morning, Plaintiff returned to the medical department complaining of increased pain. <u>Id.</u> at pages 19-20.  Staff referred him to the hospital for treatment and a possible appendectomy.  <u>Id.</u>

Plaintiff was admitted to the hospital the same day to the care of physician Nathaniel Graham, M.D. <u>Id.</u> at page 51.  Dr. Graham opined that Plaintiff's condition was caused by a "[d]elayed diagnosis of appendicitis in a 64-year-old who has been on Decadron.  There is no specific abscess to drain and I suspect he has had this for nearly a week with symptoms masked by his various anti-inflammatories taken for his gout, which was appropriate." <u>Id.</u> at page 51.  Dr. Graham concluded:

> At this point, I think the best course would be to admit him, put him on IVs and

5

> multiple antibiotics, give vitamin C to help correct the healing defect associated with steroid use and see if this cools down sufficiently to send him back to FCI on oral medication, then do an elective interval appendectomy or whether he will need more urgent surgical procedure.

Id.

Two days later, on September 7th, Plaintiff underwent an appendectomy. Id. at page 52. Plaintiff's post-operative diagnosis was gangrenous ruptured appendicitis with small bowel obstruction. Id.

In his opposition to the motion for summary judgment, Plaintiff argues that if prison staff had not been negligent in their diagnosis and treatment of his appendicitis,

> Plaintiff would not have suffered the mental stress of not knowing if he were going to die or not, would not have had to suffer thru the pain of the infection, the pain of the operation, nor the physical injury caused by the surgery (the approximately 2 foot scar) and recovery period.  That Plaintiff has the clearly obvious scar from the operation, the near death trama [sic] from the initial and improper diagnosis, the prior to pain and suffering, and the post pain and suffering which are actual injury or damage suffered by Plaintiff.

Document # 59, "Brief in Support of Plaintiff's Objections to Summary judgment - Renewed Motion for Jury Trial and Request of Expert Witness," page 5.

**IV.     Analysis of the FTCA Claim**

Under the principle of sovereign immunity, the United States cannot be sued for damages unless it consents to being sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). However, the Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government[5] for torts committed by its employees while in the scope of their employment. See 28 U.S.C. § 2675(a). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996).  The FTCA sets forth the government's consent to be

---

[5]     All actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee. 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b).

sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted).[6]

The FTCA does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court. Hence, in a FTCA action, the district court applies the law of the state in which the challenged act occurred. See 28 U.S.C. § 1346(b); Gannon v. United States, 292 Fed. Appx. 170, at *2 (3d Cir. 2008); DeJesus v. U.S. Department of Veteran's Administration, 479 F.3d 271, 279 (3d Cir. 2007).

In order to establish a cause of action in medical negligence under Pennsylvania law, a plaintiff bears the burden of demonstrating that there was (1) a duty or obligation owed by the physician[7], (2) breach of that duty by the defendants, (3) a causal connection between the defendant's breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant. Wooding v. United States of America, 2007 WL 951494, at *3 (W.D. Pa.) quoting Quinby v. Plumstead Family Practice, Inc., 907 A.2d 1061, 1070 (2006). All of the elements must be met in order for a plaintiff to recover in tort.

Because the actions of a physician encompass matters not within the ordinary knowledge

---

[6] The consent contained in the FTCA is limited and Congress has expressly provided for exceptions to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a)-(n); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). These exceptions are to be construed in favor of the sovereign. United States v. Nordic Village, Inc., 503 U.S. 30, 32-36 (1992).

[7] "Whether a defendant owes a duty of care to a plaintiff is a question of law" (Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir.1993)) and revolves around the relationship between the two parties. In this case, Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for negligence. Title 18 U.S.C. § 4042 requires "the exercise of ordinary diligence" to keep inmates safe from harm. Id. The federal courts have construed this statute to include the duty to provide adequate medical care to all federal inmates. See Cashwell v. United States, 2009 WL 2929444, at *5 (M.D. Pa. Sept. 8, 2009) ("In a case brought by a federal prisoner, federal law preempts any standard of care under state law and provides that the Bureau of Prisons owes the prisoner ordinary diligence. 18 U.S.C. § 4042.").

and experience of a layperson, Pennsylvania law requires that "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Wooding, 2007 WL 951494, at *3, quoting Simpson v. Federal Bureau of Prisons, 2005 WL 2387631, at *5 (W.D. Pa.).  The Supreme Court of Pennsylvania has explained this requirement:

> Courts sitting in medical malpractice cases require detailed expert testimony because a [trier of fact] generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care. [...] Determining whether there was a breach of duty, however, involves a two-step process; the court must first determine the standard of care; it then must examine whether the defendant's conduct measured up to that standard.  **Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also provide that the injury was caused by the failure to employ that requisite skill and knowledge.  We have previously concluded that this must be accomplished with expert medical testimony presented at trial by doctors testifying as expert witnesses.**
>
> * * *
>
> We affirm our earlier conclusion, set forth in numerous decisions of this Court that, medicine being an applied science, the realm of reasonable choice is best defined by those engaged in the practice, and expert medical testimony on this issue is required.

Toogood v. Rogal, 573 A.2d 1140, 1149 (Pa. 2003) (emphasis added).  However, "expert testimony is not required when a matter 'is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.'"  Wooding, at *3, quoting Simpson, at *5.

Defendant has come forward with the written opinion of expert witness Dr. Jamie Stern who opines that Plaintiff's medical treatment met the appropriate standard of care and that it is unlikely that a diagnosis of appendicitis would have been made any earlier than September 5, 2006.  Dr. Stern specifically notes that Plaintiff's first complaints of abdominal pain were vague; that a diagnosis of appendicitis can be difficult, especially in patients of Plaintiff's age; and, that even upon admission into the hospital, surgery was not performed for two days.  Document #

56-6, page 3.

There is nothing in the record before this Court to support Plaintiff's speculation that an earlier diagnosis of his appendicitis would have changed the course of events in this case. Here, in opposition to the motion for summary judgment, Plaintiff acknowledges that he has not obtained an expert witness in support of his negligence claim but argues that he "in fact has established medical malpractice without the testimony of an expert" (document # 59, page 6) and cites to the evidence of Dr. Graham's report which indicates:

> IMPRESSION: Delayed diagnosis of appendicitis in a 64-year-old who has been on Decadron. There is no specific abscess to drain and I suspect he has had this for nearly a week with symptoms masked by his various anti-inflammatories taken for his gout, which was appropriate. Unfortunately, it has let this progress to a point where it is quite possible the appendix will be difficult to identify, isolate, and remove in a mass of phlegmonous tissue.

Document 20-6, pages 61-62.

Plaintiff misunderstands Pennsylvania law requiring expert medical testimony. See Toogood. That medical expert's opinion must be rendered within "a reasonable degree of medical certainty" as to the specific legal issues of breach of standard of care and the proximate cause prongs of a negligence case. See Wooding; Montgomery v. South Philadelphia Medical Group, 656 A.2d 1385, 1390 (Pa. Super. 1995); Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990). The opinion of the Dr. Graham is not sufficient in this regard on either point. Dr. Graham does not opine on any issue "with a reasonable degree of medical certainty" - indeed, Graham lists three differential diagnoses ("urinary tract infection; diverticulitis; or appendicitis, possibly delayed") and takes a conservative wait and see approach to Plaintiff's complaints. Additionally, Dr. Graham does not opine as to the specific legal issues of breach of the standard of care or proximate cause (the causal connection between the breach of duty and the resulting injury.).

"Without evidence to contradict Defendant's position on summary judgment, the court will not make the inferential leap that the medical staff's acts or omissions in its course of treatment" are the cause of any resulting injuries. Cashwell, at *5; see also Hakeem, 260 Fed. Appx. at 435 ("Absent expert opinion that the prison's treatment deviated from acceptable

medical standards, a reasonable fact-finder could not conclude that the prison acted negligently.").[8]

     Summary judgment will be granted in favor of the United States. An appropriate order follows.

---

[8] In fact, Plaintiff has neither pled nor offered evidence sufficient to show that he suffered any injury that could have been prevented or avoided by a different course of treatment at the prison.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES NEIDIG, JR.** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 07-229 Erie |
| ) | Magistrate Judge Baxter |
| **UNITED STATES OF AMERICA,** ) | |
| Defendant. ) | |

**ORDER**

AND NOW, this 17th day of March, 2010;

In light of the foregoing opinion,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment (Document # 53) is GRANTED. Judgment is granted in favor of the United States and against Plaintiff.

IT IS FURTHER ORDERED that Plaintiff's "motion for jury trial and request for expert testimony" (Document # 58) is denied.

The Clerk of Courts is directed to close this case.


S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge